

eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

February 4, 2021

**BY ECF**
Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Vasicka, et ano. v. Kerwin, et ano.*, 18 CV 6858 (RPK) (SJB)

Your Honor:

I represent plaintiffs in the above-referenced matter. I write pursuant to the order dated January 28, 2021 and Rule IV.A.3 of the Court's Individual Practices to respectfully respond to defendants' pre-motion letters filed at DE #36-37.

If it should please the Court, defendants' submissions are frivolous and at odds with the record. Review of the video footage in this case reveals genuine disputes of material fact that are not amenable to summary judgment (and certainly not in favor of defendants).[1] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (where there is a dispute as to material facts relevant to assessing the objective reasonableness of a defendant officer's conduct, "the factual questions must be resolved by the factfinder") (collecting cases). As set forth below, this Honorable Court should convert the pre-motion letters to motions and deny them pursuant to Rule IV.A.5 of the Court's Individual Practices.

Notably, prior to this incident defendant Kerwin (the female officer in the videos) had been the subject of repeated complaints for acts of unjustified aggression toward park patrons like Ms. Vasicka and her daughter. Kerwin and LaValley's misconduct in this case – which included failure to follow basic procedures and filing false official reports – was deemed sufficiently serious to warrant their termination by the New York State Parks Police Department.[2] *See* Letters, annexed as Exhibit 1.

When Parks Department investigators interviewed Kerwin regarding the incident involving plaintiffs, she was asked about a relevant pattern of similar misconduct:

> …I have a question…in your counseling, it states that all three [prior disciplinary] cases lend themselves to a pattern of behavior on your part…where you seem to escalate

---

[1] *See* Video Footage at https://vimeo.com/507686660/2d4081783d and https://vimeo.com/507688908/800978b68a.
[2] Kerwin resigned before she could be terminated. LaValley testified that he is appealing the termination recommendation.

> rather than de-escalate minor situations of violation of law. In all three [prior] situations, you deemed that you were being threatened by the complainants. However, on investigation, none of the encounters justified arrest or the perceived use of force against these [park patrons]. *Your encounter with Ms. Vasicka, her three-year-old daughter, and her dog, is very similar to the pattern described.* Is this why you did not properly document the incident?

Exhibit 2, p. 116 (emphasis added). *See, e.g., Ismail v. Cohen*, 899 F.2d 183, 188-89 (2d Cir. 1990) (similar act evidence may be admitted in civil rights cases to show "pattern, intent, absence of mistake, etc."); *Lombardo v. Stone*, 99 CV 4603 (SAS), 2002 WL 113913, *6 (S.D.N.Y. Jan. 29, 2002) ("A civil rights plaintiff is entitled to prove by extrinsic evidence that the defendant acted for the purpose of causing harm. Indeed, the exclusion of such evidence may affect the substantial rights of the plaintiff under Rule 103(a).") (citations omitted) (collecting cases); *id.* ("Similar act evidence offered to show a defendant's intent is admissible in a section 1983 case because the defendant's intent is a relevant element of the constitutional tort.") (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 n.1 (2d Cir. 1988)).

Here, as in her prior cases, defendant Kerwin violated Section 11A(c) of the New York State Parks Police Manual, which governs enforcement and provides that: "when minor infractions are involved, [officers must] attempt to achieve voluntary compliance through understanding handled by warnings applied in a friendly, tactful and firm manner." It is beyond cavil that Kerwin never attempted to obtain plaintiffs' voluntary compliance for this most minor of infractions – which alone vitiates any assertion of arguable probable cause – and that, in any event, Ms. Vasicka was (even by defendants' account) attempting to comply (i.e., leave) at the time she was assaulted, arrested and separated from her infant daughter. Qualified immunity is thus unavailable on this record. *Zellner*, 494 F.3d at 368; *accord, e.g., McClellan v. Smith*, 439 F.3d 137, 149 (2d Cir. 2006) ("resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity") (citing *Curry v. City of Syracuse,* 316 F.3d 324, 337 (2d Cir. 2003)).

This is to say nothing of plaintiffs' excessive force claim, which could not possibly be resolved at summary judgment. *See, e.g. Ismael v. Charles*, 18 CV 3597 (GHW), 2020 WL 4003291, *7 (S.D.N.Y. July 15, 2020) ("[G]ranting summary judgment against plaintiffs on excessive force claims is rarely appropriate…That is unsurprising because whether a use of force was justified is a fact intensive inquiry that often must be left for a jury to decide….For those reasons, courts are hesitant to dismiss complaints alleging excessive force even at the summary judgment stage if conflicts exist in the record regarding the degree and justification of force.") (citations, internal quotation marks and brackets omitted) (collecting cases).

Disputes of fact similarly preclude summary judgment as to plaintiffs' claims against Kerwin's supervisor, defendant LaValley. Contrary to LaValley's letter at DE #37, the record, including the videos, establishes his direct involvement in the challenged conduct as to the claims pled against him. *See Provost v. City of Newburgh*, 262 F.3d 146, 154-55 (2d Cir. 2001) (defining personal involvement as "personal participation by one who has knowledge of the facts that rendered the conduct illegal") (citing *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001)) (footnote omitted). For the same reasons as Kerwin, such issues of fact render LaValley ineligible for qualified immunity.

Hon. Rachel P. Kovner
Feb. 4, 2021

Lack of merit can be further inferred from defendants' mistreatment of the record. For example, defendants represent as undisputed that Ms. Vasicka, who had stopped to get lemonade for her infant daughter, somehow caused the incident by being "uncooperative" and "fail[ing] to properly identify herself, bec[oming] agitated, loud and argumentative," after the defendants allegedly observed Hicks, plaintiffs' thirteen-year-old beagle, "pulling on its leash and barking aggressively at park patrons." DE #36, p. 1. However, as Ms. Vasicka explained at her deposition (Exhibit 3, pp. 79-83):

Q. Did you ever see Hicks bark at strangers?

A. No. He would never bark at strangers…[Hicks was] [l]ying down [while we got lemonade].

Q. …What happened as you returned to the dog?

A. I untied him and reattached his leash. And [defendant Kerwin] asked me if I knew dogs were not allowed in the park. And I said, no, I was not aware. We had no intention of staying in…this park. We were going to the dog run, and I pointed to it. You could it see it right there. And then she said, Don't think that I'm not going to arrest you because you have a child, and then I was taken aback. And at that moment, she handcuffed one hand. And V.V. was screaming and crying, my daughter, at the top of her lungs, extremely afraid. And I crouched down as I was handcuffed and I tried [to] console her, and I also asked the officer, Please, can you remove this handcuff because you're scaring my daughter.…And at that point, the officer asked me for identification, and I said I don't have my identification. I live in the building right there, and I pointed…And she…asked me my name, and I told her my name. And then she asked me to spell my last name, and I spelled my last name clearly, V-a-s-i-c-k-a. And then she handcuffed me again and said, Well, since you're not complying, I'm going to have to handcuff and arrest you. And at that point I was in shock because I had given her my information and I had complied…And from there, it was – I could not believe what unfolded. She pushed me onto the park bench…trying to handcuff my other hand, and injured my back. And my legs were up in the air. I was wearing a dress. My underwear was like exposed to the world. My daughter was standing there screaming her head off, holding her doll, and standing next to her bicycle. And our dog was just smelling under the bench.…And the officer would not stop.…[T]hen she pushed me towards the police car and tried to push me into the police car. And I couldn't see my daughter at that point; I didn't know where she was. There was a crowd and my daughter was gone.

Rule IV.A.5 of the Court's Individual Practices contemplates that the Court may, in appropriate cases, exercise its discretion to "construe the pre-motion letter, along with counsel's arguments at the pre-motion conference, as the motion itself." Plaintiffs respectfully submit that this is an appropriate case for the exercise of the Court's discretion and that, after hearing argument, the Court should consider converting and denying defendants' contemplated motions. Thank you for your consideration of this request.

Respectfully submitted,

Gabriel P. Harvis

Encl.
cc:     All Counsel