UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VERONICA VASICKA, *individually and as*
*mother and natural guardian of infant* V.V.,

                 Plaintiffs,

           v.                                **MEMORANDUM AND ORDER**

*Police Officer* LYNN KERWIN *and Police Officer*        18-CV-6858 (RPK) (SJB)
JUSTIN LAVALLEY,

                 Defendants.
------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        On behalf of herself and her minor daughter, plaintiff Veronica Vasicka sues Police Officer

Lynn Kerwin and Sgt. Justin LaValley, raising various claims based on an altercation that occurred

when Officer Kerwin ticketed Ms. Vasicka for taking her dog into a Brooklyn park.  Officer

Kerwin and Sgt. LaValley move for summary judgment.  For the reasons that follow, defendants'

motions are granted in full.

## BACKGROUND

        The following facts, taken from the parties' Rule 56.1 statements, depositions, and

evidentiary filings, are uncontradicted by other evidence unless noted.  Where available, this

narrative also draws on undisputed, unambiguous video footage.  *See Scott v. Harris*, 550 U.S.

372, 380–81 (2007) (video footage may be used to resolve dispute of fact at summary judgment);

*Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) ("[A] party's declaration will not

create a material issue of fact in those rare cases where it is 'blatantly contradicted by the record,

so that no reasonable jury could believe it' (as when a plaintiff's declaration statements are directly

refuted by undisputed video evidence).") (quoting *Scott*, 550 U.S. at 380); *Pratt v. Nat'l R.R.*

*Passenger Corp.*, 709 F. App'x 33, 34 (2d Cir. 2017) (affirming grant of summary judgment on the basis of "objective video . . . evidence").

On June 9, 2018, Ms. Vasicka arrived at East River State Park[1] in Williamsburg with her minor daughter, V.V., and their beagle, Hicks. Pls.' R. 56.1 Statement ¶¶ 24, 28, 30 (Dkt. #51). Although the trio was ultimately heading to the park's dog run, they did not enter the park via the dog-run entrance. *Id*. at ¶¶ 11–12, 28. Rather, Ms. Vasicka took Hicks and her daughter through the park's main entrance about a block away. *Ibid.*; Decl. of Gabriel P. Harvis, Ex. 17, at 76:2–4 (Dkt. #50-17) ("Vasicka Tr."). Once inside, Ms. Vasicka tied Hicks to a pole and left him unattended for about five or six minutes. Pls.' R. 56.1 Statement ¶¶ 30–32; Vasicka Tr. 80:8–11. The park was hosting the "Smorgasburg" food fair, and Ms. Vasicka and her daughter had decided to purchase a lemonade from a food truck. Pl.'s R. 56.1 Statement ¶¶ 21–22, 30.

While the two were away buying lemonade, Officer Kerwin and Sgt. LaValley discovered Hicks tied to the pole. *Id*. at ¶ 33. Section 375.1(n) of title 9 of New York's codes, rules, and regulations prohibits dogs in the park outside of the dog run, so the officers returned to their patrol car to retrieve a summons book. *Id*. at ¶¶ 15, 35–36; *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 375.1(n). The parties dispute whether Hicks was barking or pulling on the leash when the officers found him. Pl.'s R. 56.1 Statement ¶¶ 33–34. While Sgt. LaValley remained at the patrol car, Officer Kerwin went back to find Hicks's owner. *Id*. at ¶ 36.

By that time, Ms. Vasicka and V.V. had returned with their lemonade. *Id*. at ¶ 37. Officer Kerwin arrived just as Ms. Vasicka was untying Hicks. *Ibid*. What happened next is disputed. According to Officer Kerwin, before she could say anything, Ms. Vasicka apologized and said that she had needed to get a drink for her daughter. Aff. of Lynn Kerwin ¶ 21 (Dkt. #47). Ms. Vasicka

---

[1] East River State Park has since been renamed Marsha P. Johnson State Park.

then refused to speak with Officer Kerwin and attempted to walk away.  *Id*. at ¶¶ 24–25.  Officer Kerwin told Ms. Vasicka to identify herself and stated that Ms. Vasicka was temporarily detained until she did.  *Id*. at ¶¶ 23–25.  Ms. Vasicka replied that she was not carrying identification and gave her name as "Veronica Estrella."  *Id*. at ¶ 26.  During the interaction, Ms. Vasicka became louder and more resistant, so Officer Kerwin began to handcuff her.  *Id*. at ¶¶ 31–32.  Ms. Vasicka said she would cooperate, so Officer Kerwin removed the cuff.  *Id*. at ¶ 32.  When Ms. Vasicka again refused to comply, Officer Kerwin called Sgt. LaValley for assistance and began to handcuff Ms. Vasicka again.  *Id*. at ¶¶ 33–36.  Ms. Vasicka began resisting and jerked away toward a park bench.  *Id*. at ¶¶ 36–38.  To prevent Ms. Vasicka from using the handcuffs as a weapon, Officer Kerwin controlled Ms. Vasicka's arm and used her "body to maintain a close position . . . to secure [Ms. Vasicka] to the bench."  *Id*. at ¶ 39.

Ms. Vasicka tells a slightly different version of events, which I assume to be true for purposes of this order, except when contradicted by the video evidence.  According to her, Officer Kerwin approached and asked whether she was aware that dogs were not allowed in the park.  Vasicka Tr. 80:13–18.  Ms. Vasicka said no, that she, V.V., and Hicks did not intend to stay in the park, and that they were heading to the dog run.  *Ibid*.  Officer Kerwin replied "[d]on't think I'm not going to arrest you because you have a child," and handcuffed one of Ms. Vasicka's hands.  *Id*. at 80:19–22.  After Ms. Vasicka agreed to comply, Officer Kerwin removed the cuff.  *Id*. at 81:1–6.  But even though Ms. Vasicka continued to cooperate, Officer Kerwin began handcuffing her again.  *Id*. at 81:7–21.  Officer Kerwin then pushed Ms. Vasicka onto a park bench, putting her knee on Ms. Vasicka and injuring her back and shoulder.  *Id*. at 81:22–82:1, 143:18–144:6.

Video of the incident establishes that when Officer Kerwin tried to handcuff Ms. Vasicka a second time, Ms. Vasicka pulled her wrist out of Officer Kerwin's hand, began arguing, and

backed away from Officer Kerwin until Ms. Vasicka either fell or was pushed onto the park bench. Aff. of Justin LaValley, Ex. 1, at 1:38–1:49 (Dkt. #57-1) ("Bystander Video").  Officer Kerwin can be seen leaning on Ms. Vasicka and attempting to handcuff her, although Officer Kerwin did not place her knee on Ms. Vasicka.  *Ibid.*; Decl. of Gabriel P. Harvis, Ex. 20, at 0:00–0:30 (Dkt. #50-20) ("Video 2").  Officer Kerwin was able to handcuff one of Ms. Vasicka's wrists.  Video 2 at 0:13–0:30.

During the altercation, another woman took V.V. aside and comforted her.  Pls.' R. 56.1 Statement ¶ 59.  Sgt. LaValley then arrived with the patrol car, which can be clearly seen in video just several meters away from both the bench and V.V.  Video 2 at 0:25–0:32.  Sgt. LaValley asked the woman to continue to watch V.V. until the situation on the bench was resolved.  Decl. of Gabriel P. Harvis, Ex. 9, at 57:5–18 (Dkt. #50-9).  He then walked over to Officer Kerwin and Ms. Vasicka, holding out his hands saying "relax, relax."  Video 2 at 0:25–0:28.  Ms. Vasicka sat up. *Id*. at 0:25–0:30.  According to Officer Kerwin, Sgt. LaValley also told Ms. Vasicka that if she cooperated, she would be issued a ticket and released.  Pls.' R. 56.1 Statement ¶ 69.  The officers then directed Ms. Vasicka to stand up and accompany them to the patrol car.  Video 2 at 0:40– 0:52.  Ms. Vasicka refused to stand up, insisting that she would not leave without her daughter. *Id*. at 0:52–1:00.  Officer Kerwin told Ms. Vasicka that her daughter would accompany them, and again directed her to stand up.  *Id*. at 1:00–1:04.  When Ms. Vasicka continued to refuse, the officers pulled her to her feet and attempted to finish handcuffing her.  *Id*. at 1:04–1:22.

Ms. Vasicka began resisting, twisting and attempting to push away from the officers.  *Id*. at 1:09–1:19.  Rather than continue to try to handcuff her, the officers simply held Ms. Vasicka's arms as they brought her to the patrol car.  *Id*. at 1:19–1:34.  At the car, the officers attempted to put Ms. Vasicka in the back seat, but she again resisted.  *Id*. at 1:34–1:40.  Eventually, the officers

gave up trying to place Ms. Vasicka in the patrol car.  Pls.' R. 56.1 Statement ¶¶ 74–75, 77.  They instead issued her a "prohibited animal" summons for violating Section 375.1(n), and released her. *Id*. at ¶¶ 75, 77; Decl. of Lisa F. Joslin, Ex. K (Dkt. #46-11).  Ms. Vasicka then retrieved V.V. Vasicka Tr. 83:15–19.

Later, Officer Kerwin filed an incident report stating that she had issued Ms. Vasicka a summons for having a dog in the park but omitting that she had had an altercation with Ms. Vasicka or attempted to arrest her.  Decl. of Gabriel P. Harvis, Ex. 23 (Dkt. #50-23) ("Incident Report"). She also failed to file other required paperwork, and Sgt. LaValley failed to correct her omissions. Decl. of Gabriel P. Harvis, Ex. 5, at 2 (Dkt. #50-5) ("Kerwin Disciplinary Letter"); Decl. of Gabriel P. Harvis, Ex. 16, at 2 (Dkt. #50-16) ("LaValley Disciplinary Letter").  For these failures and others, New York State Park Police threatened both officers with termination.[2]  *See* Kerwin Disciplinary Letter; LaValley Disciplinary Letter.

---

[2] Evidence concerning defendants' past misconduct on which plaintiffs rely is not admissible.  *See* Pls.' R. 56.1 Statement ¶¶ 5, 8.  Plaintiffs argue these materials show that defendants are "known problem officer[s]" who "senselessly escalate[]" encounters.  Pls.' Mem. in Opp'n 1, 11–12.  But Federal Rule of Evidence 404(b)(1) expressly bars the admission of evidence offered solely "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence is properly excluded because it "tends to distract the trier of fact from the main question of what actually happened on the particular occasion."  Fed. R. Evid. 404 Advisory Committee Note to Subdivision (a); *see id*. Advisory Comm. Note to Subdivision (b) (explaining that Rule 404(b) is an application of Rule 404(a)'s general rule).  Rather than focusing the litigation on "what the evidence in the case shows actually happened," such materials instead "subtly permit[] the trier of fact to reward the good man and to punish the bad man because of their respective characters."  Fed. R. Evid. 404 Advisory Comm. Note to Subdivision (a).  This rationale applies to the disciplinary records here.  The question is what happened in the park, not whether the officers have a general propensity for "senselessly escalat[ing]" encounters.  Pls.' Mem. in Opp'n 12.

Nor is this evidence subject to Rule 404(b)'s pattern exception.  *See* Pls.' Mem. in Opp'n 11 (arguing that the records show a "pattern of similar misconduct").  While evidence of prior bad acts may be admitted to show "a pattern of relevant conduct," such evidence is only admissible if the prior acts "share unusual characteristics with the act charged or represent a unique scheme."  *Banushi v. Palmer*, No. 08-CV-2937 (KAM) (JO), 2011 WL 13894, at *2 (E.D.N.Y. Jan. 4, 2011) (internal quotation marks omitted) (quoting *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991)), *aff'd*, 500 F. App'x 84 (2d Cir. 2012).  The officers' alleged bad acts display no such "unusual and distinctive . . . signature."  *Ibid*.  Officer Kerwin's records suggest she escalated several routine stops, Pl.'s R. 56.1 Statement ¶ 5, but these encounters do not contain any distinctive signature, and the "mere repeated commission" of acts "of the same class" is not enough to satisfy this exception.  *Banushi*, 2011 WL 13894, at *2.  For his part, Sgt. LaValley's records reference only two incidents—a disorderly conduct episode in 2008 and an inappropriate comment in 2017. Pl.'s R. 56.1 Statement ¶ 8.  Taken together, these two events can hardly be said to constitute a relevant "pattern." *Banushi*, 2011 WL 13894, at *2.

For her part, Ms. Vasicka retained counsel.  Pls.' R. 56.1 Statement ¶ 85.  She never personally appeared in court in connection with the summons—although her counsel appeared on her behalf—or paid any ticket or fine.  Decl. of Lisa F. Joslin, Ex. K 110:7–19 (Dkt. #46-5).  Instead, the summons was adjourned in contemplation of dismissal.  Pls.' R. 56.1 Statement ¶ 85.

Ms. Vasicka and V.V. then sued Officer Kerwin and Sgt. LaValley under 42 U.S.C. § 1983.  Compl. (Dkt. #1).  The operative amended complaint brings claims for (i) an unlawful stop, (ii) false arrest, (iii) the unreasonable use of force, (iv) the deprivation of substantive due process by separating Ms. Vasicka and V.V., (v) the denial of Ms. Vasicka's fair-trial right, (vi) malicious abuse of process, (vii) deliberate indifference, and (viii) failure to intervene.  Am. Compl. ¶¶ 23–52 (Dkt. #22).

Officer Kerwin and Sgt. LaValley now move for summary judgment on all claims.  *See* Mot. for Summ. J. by Lynn Kerwin (Dkt. #45); Mot. for Summ. J. by Justin LaValley (Dkt. #56).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant.  *See ibid*.  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

Defendants' motions are granted in full.  The existence of reasonable suspicion and probable cause entitle defendants to summary judgment on plaintiffs' unlawful-stop and false-arrest claims, as does qualified immunity.  Qualified immunity also entitles defendants to summary judgment on plaintiffs' deprivation-of-custody and deliberate-indifference claims, while plaintiffs' fair-trial and abuse-of-process claims falter for a lack of evidence.  Finally, because none of the underlying claims have merit, the failure-to-intervene claim fails as well.

## I.    Defendants Prevail on the Unlawful-Stop and False-Arrest Claims

Defendants are entitled to summary judgment on the unlawful-stop and false-arrest claims. Qualified immunity also shields defendants against the claim that the officers seized V.V. in violation of the Fourth Amendment.

### A.    Ms. Vasicka's false-arrest claim fails.

The existence of probable cause dooms Ms. Vasicka's false-arrest claim.  And even if it did not, defendants are still entitled to qualified immunity.

7

### 1. Defendants had probable cause to believe Ms. Vasicka had violated Section 375.1(n).

Because probable cause existed to arrest Ms. Vasicka, her false-arrest claim cannot succeed.  Probable cause for an arrest exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  This inquiry is objective; it does not turn on the officer's subjective motivation for the arrest, but simply whether probable cause for an arrest existed. *Fabrikant*, 691 F.3d at 217 (citing *Devenpeck*, 543 U.S. at 153).  The existence of probable cause "is a complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

Here, it is uncontested that defendants observed Hicks tied to a pole inside the park.  Pls.' R. 56.1 Statement ¶¶ 31–34.  It is also uncontested that, later, Officer Kerwin observed Ms. Vasicka untying Hicks while carrying a lemonade. *Id*. at ¶ 37.  Put more directly, Officer Kerwin personally observed Ms. Vasicka in possession of a dog in the park after the dog had been left tied to a pole for several minutes.  Such an observation was sufficient to "warrant a person of reasonable caution in the belief" that Ms. Vasicka violated Section 375.1(n)'s prohibition on possessing dogs in the park. *Fabrikant*, 691 F.3d at 214; *Galarza v. Monti*, 327 F. Supp. 3d 594, 602 (S.D.N.Y. 2018) (an officer has probable cause to make an arrest when he "observe[s] the plaintiff violating" a city ordinance).  As such, it provides Officer Kerwin with a "complete defense" to plaintiffs' false-arrest claim. *Betts*, 751 F.3d at 82.  When "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in [her] presence, he may, without

violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Ms. Vasicka's explanation to Officer Kerwin that she was on the way to the dog run does not change the analysis. Vasicka Tr. 80:13–18. Ms. Vasicka has not identified any authority supporting her view that dog owners may bring their pets through state park areas other than the dog run—notwithstanding Section 375.1(n)—so long as they are headed toward the dog run. *See* Pl.'s Mem. in Opp'n 11. And even if such a carveout existed, "an officer is not required to investigate an individual's innocent explanations as to an alleged crime . . . before making an arrest based on probable cause." *Washington v. Napolitano*, 29 F.4th 93, 98 (2d Cir. 2022); *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)). The behavior Officer Kerwin observed—a dog tied to a pole while its owner was purchasing a lemonade—created a "fair probability" that Ms. Vasicka had entered the park to purchase a lemonade rather than to travel to the dog run. *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Nor do police regulations directing officers to deescalate encounters with park users save plaintiff's Fourth Amendment claim. *See* Pls.' Mem. in Opp'n 11 (discussing New York State Park Police Manual Article 11A). While states and localities may prohibit arrests for certain offenses or proscribe specific procedures to govern police conduct, Section 1983 claims vindicate constitutional rights—not state-law protocols. *See Virginia v. Moore*, 553 U.S. 164, 174 (2008) ("A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional."); *Atwater*, 532 U.S. at 354 (arrest for failure to wear a seatbelt); *United States v. Rodriguez*, 368 F. App'x 178, 180 (2d Cir. 2010) (affirming arrest

for holding an open container in violation of New York City Administrative Code). The Fourth Amendment, not Article 11A, governs plaintiffs' claims, and the Fourth Amendment does not bar an officer from arresting someone for a minor infraction. *Virginia*, 553 U.S. at 174; *Atwater*, 532 U.S. at 354.

In sum, probable cause "is a complete defense" to Ms. Vasicka's false-arrest claim and entitles defendants to summary judgment. *Betts*, 751 F.3d at 82.

### 2. Defendants are also entitled to qualified immunity.

Even were it otherwise, qualified immunity would shield these officers, because the officers had "arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). Based on the officers' observations, it was "objectively reasonable" for the officers to conclude that there was probable cause to believe Ms. Vasicka was violating the prohibition on dogs in the park. *Ibid.* (quoting *Escalera*, 361 F.3d at 743). Accordingly, defendants are entitled to summary judgment on the false-arrest claim.

### B. Ms. Vasicka's unlawful-stop claim also fails.

On this same logic, Ms. Vasicka's unlawful-stop claim also fails. An investigative stop requires only reasonable suspicion—a lower standard than probable cause. *Patterson*, 25 F.4th at 135. While probable cause requires facts and circumstances showing a "fair probability" that the seized party has committed a crime, *id.* at 136 (quoting *Gates*, 462 U.S. at 238), reasonable suspicion requires only that "authorities can point to 'specific and articulable facts which, taken together with rational inferences from those facts,' provide a 'particularized and objective basis

10

for suspecting legal wrongdoing,'" *ibid*. (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968), and *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  It therefore follows that if probable cause exists, so too does reasonable suspicion.

As explained, defendants saw Hicks tied to a pole, and later Officer Kerwin saw Ms. Vasicka untying him.  Pls.' R. 56.1 Statement ¶¶ 31–34, 37.  These observations provided "specific and articulable facts which, taken together with rational inferences from those facts, provide[d] . . . a particularized and objective basis for suspecting legal wrongdoing."  *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks omitted) (quoting *United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015)).  Specifically, they created a "reasonable suspicion" that Ms. Vasicka had violated Section 375.1(n).  *Ibid*. (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014)).  On that basis, Officer Kerwin was free to "approach" Ms. Vasicka to "investigat[e]," *ibid*. (quoting *Terry*, 392 U.S. at 22), and ask Ms. Vasicka to identify herself, *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004) ("[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops.").

Moreover, qualified immunity also shields the officers.  An officer is entitled to qualified immunity on an unlawful-stop claim so long as "(a) it was objectively reasonable for the officer[s] to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met."  *Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 614 (S.D.N.Y. 2017) (quoting *Sutton v. Duguid*, No. 05-CV-1215 (JFB) (JMA), 2007 WL 1456222, at *6 (E.D.N.Y. May 16, 2007)) (collecting cases); *Thompson v. Hernandez*, No. 16-CV-1667 (FB) (RER), 2020 WL 1066252, at *4 (E.D.N.Y. Mar. 5, 2020).  Witnessing Hicks tied to a pole and then Ms. Vasicka returning with a lemonade made it "objectively reasonable" to

believe that "reasonable suspicion [of a Section 375.1(n) violation] existed." *Cox*, 271 F. Supp. 3d at 614.

**C.     The seizure of V.V. did not violate a clearly-established right.**

Defendants are also entitled to qualified immunity on V.V.'s false-arrest and unlawful-stop claims.  Assuming that the officers seized V.V., Pls.' Mem. in Opp'n 17 n.4 (asserting that "V.V. was also seized"); Pls.' Mem. in Opp'n ¶ 59 (Sgt. LaValley asked a bystander to watch V.V. until Ms. Vasicka was released); Decl. of Gabriel P. Harvis, Ex. 9, at 57:3–19 (Dkt. #50-9), the seizure did not violate any clearly established statutory or constitutional right.

Qualified immunity attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam) (internal quotation marks and citation omitted).  While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted).  Courts may "grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020) (citation omitted).

Plaintiffs cite no precedent that "clearly establish[es]" that an officer may not take custody of a young child while stopping or arresting her parent.  *White*, 580 U.S. at 78.  "Where a minor plaintiff is detained not on suspicion of criminal activity but, rather, as incident to their parent or guardian's arrest, it is 'inappropriate to apply the traditional false arrest inquiry to their civil rights claim.'" *Graham v. City of New York*, No. 08-CV-3518 (KAM) (RML), 2011 WL 3625074, at *5 (E.D.N.Y. Aug. 17, 2011) (citation omitted).  Instead, courts have asked whether a seizure under

such circumstances was "reasonable." *Ibid*. ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable" given the circumstances of its occurrence in order to incur § 1983 liability.") (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)).  On this basis, courts in this circuit have found the seizure of an accompanying minor during the arrest of a parent to be constitutionally reasonable. *Ibid*. (granting summary judgment when officers briefly held children in a car); *Armatas v. Maroulleti*, No. 08-CV-310 (SJF) (RER), 2010 WL 4340437, at *11 (E.D.N.Y. Oct. 19, 2010) (granting summary judgment where officers took children to station house), *report and recommendation adopted in relevant part*, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd in relevant part*, 484 F. App'x 576 (2d Cir. 2012); *cf. Cherrington v. Skeeter*, 344 F.3d 631, 638 (6th Cir. 2003) (qualified immunity shielded officers who took children to station house).  While no case addresses whether an officer could ask a bystander who was only a few meters away to watch a child while they arrested the child's parent, existing precedents do not clearly establish that doing so was unreasonable.

The sole case plaintiffs cite, *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 361 (S.D.N.Y. 2012), is inapplicable.  Qualified immunity analysis "must . . . be 'particularized' to the facts of the case." *Cugini v. City of New York*, 941 F.3d 604, 616 (2d Cir. 2019) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  *Phillips* involved an interview of a child at school without parental consent, 894 F. Supp. 2d at 359, so it is too dissimilar from a seizure that occurred "incident to [a] parent or guardian's . . . arrest" to govern, *Graham*, 2011 WL 3625074, at *5.

Accordingly, defendants are entitled to summary judgment on the false-arrest and unlawful-stop claims in full.

## II.      Qualified Immunity Shields Defendants from the Excessive-Force Claim

Viewing the evidence in the light most favorable to Ms. Vasicka, qualified immunity also requires summary judgment for defendants on the excessive-force claim.

Qualified immunity shields officers from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person should have known." *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Creighton,* 483 U.S. at 640. Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1152  (internal quotation marks omitted).

Resolving all disputed facts in Ms. Vasicka's favor, the relevant portion of the encounter unfolded as follows.  When Officer Kerwin went to handcuff Ms. Vasicka a second time, Ms. Vasicka resisted by pulling her arm away and backing away from Officer Kerwin.  Bystander Video at 1:38–1:52.  Officer Kerwin then pushed Ms. Vasicka down onto a bench, leaned on her, and controlled her arm.  *Id*. at 1:52–2:52.  Later, after Ms. Vasicka refused to stand, the officers pulled her to her feet.  Video 2 at 1:04–1:09.  She began to resist being handcuffed, so the officers held her arms and directed her toward the patrol car.  *Id*. at 1:09–1:34.  They then attempted to push Ms. Vasicka, who was still unhandcuffed, into the patrol car, and she again resisted.  *Id*. at 1:34–1:40.  Finally, the officers gave up.  Pls.' R. 56.1 Statement ¶¶ 74–75, 77.  These events resulted in injuries to Ms. Vasicka's back and shoulder.  Vasicka Tr. 81:22–82:1, 143:18–144:6.

The parties cite no precedent establishing that an officer may not push a resisting arrestee to the ground or attempt to control or handcuff a resisting arrestee.  *Cf. Tracy*, 623 F.3d at 95–99 (considering whether officers used excessive force in sequential portions of encounter).  To the

14

contrary, existing precedent counseled that similar use of force was reasonable when an individual attempts to evade arrest. *Id*. at 98 ("Given that [the plaintiff] was clearly resisting arrest at that point, it was not unreasonable for [the officer] to respond by diving on top of [the plaintiff] and pinning him down so that he could not get back up and continue to flee."). While the relatively minor nature of Ms. Vasicka's alleged infraction distinguishes this scenario from others where officers have brought noncompliant arrestees to the ground, existing precedent did not clearly prohibit the amount of force that Officer Kerwin used in this instance given that Ms. Vasicka can be clearly seen resisting. *Cf. Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) (affirming grant of summary judgment in favor of patrolmen who pushed trespasser onto his stomach in order to handcuff him).

Nor did existing precedent clearly prohibit pulling a still-unhandcuffed and noncompliant Ms. Vasicka to her feet, pushing her to the patrol car, and attempting to place her in the car. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). If anything, existing precedent indicates that the Fourth Amendment permits "forcibly mov[ing] [a detainee] to the patrol car" when the detainee is not yet handcuffed and continues to resist. *Tracy*, 623 F.3d at 98 (holding that an officer could forcibly move a detainee, even though the detainee "could not walk due to injury"); *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (affirming directed verdict for officers who "did nothing more than 'grip' [a detainee's] shoulders and 'push' him out of his mother's apartment to the waiting police car") (brackets and internal citation omitted); *cf. Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) (an officer may not "use *significant* force against a *restrained* arrestee who is *not* actively resisting") (emphasis added); *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 569 (E.D.N.Y. 2013) (qualified immunity did not shield

15

an officer who shoved handcuffed detainee down a flight of stairs).  Ms. Vasicka's active resistance and the officers' restraint in doing nothing more than pulling Ms. Vasicka to her feet, trying and then abandoning an attempt to handcuff her as she resisted, and holding her arms by her sides entitles them to summary judgment on this claim as well.

Defendants' motion for summary judgment on plaintiffs' excessive-force claim is granted.

### III.    Qualified Immunity Resolves Plaintiffs' Substantive Due Process Claim

Plaintiffs' substantive due process claim also falters because defendants did not violate any clearly established constitutional right when they took Ms. Vasicka to the squad car several meters away from V.V.  Again, the parties identify no precedent that clearly establishes that an officer may not separate a parent from a child for several minutes while conducting a stop or an arrest. Indeed, existing caselaw suggests the contrary.

The Supreme Court has recognized that a parent's interest "in the care, custody, and management of [her] child" is a "fundamental liberty interest protected by the Fourteenth Amendment."  *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  The standard for asserting a deprivation of custody, though, is stringent.  To violate the Fourteenth Amendment, the governmental interference in the parent-child relationship must be "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  *Ibid.* (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)).  A brief deprivation typically does not violate this standard because, however "incorrect or ill-advised" it may be, *ibid.* (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)), it does "not result in the parents' wholesale relinquishment of their right to rear their children," *ibid.* (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003)).  Accordingly, "[a]bsent truly

extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process custody claim." *Ibid*.

Defendants' temporary interference with Ms. Vasicka's custody of V.V. cannot be said to have violated any "clearly established" substantive due process right. *White*, 580 U.S. at 78. The officers' brief interference with Ms. Vasicka's custody of V.V. did "not result in [Ms. Vasicka's] wholesale relinquishment of [her] right to rear [her] children." *Cox*, 654 F.3d at 275 (quoting *Nicholson*, 344 F.3d at 172). And while "truly extraordinary circumstances" could elevate a brief deprivation into a constitutional harm, *ibid*., no precedents "clearly establish[]" that the circumstances in this case qualify, *White*, 580 U.S. at 78.

## IV.   Summary Judgment Is Warranted on the Fair-Trial and Abuse-of-Process Claims

Plaintiffs' fair-trial and abuse-of-process claims both fail because plaintiffs do not adduce evidence to establish each of the elements of these claims.

### A.   Plaintiffs do not establish either the fabrication-of-evidence or resulting-deprivation-of-liberty elements of the fair-trial claim.

To prevail on a fair-trial claim, a plaintiff must prove that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). A plaintiff may establish the fabrication-of-evidence element by showing that the defendant omitted material information from the forwarded evidence. *Tortora v. City of New York*, No. 15-CV-3717 (MKB), 2019 WL 9100369, at *23 (E.D.N.Y. Mar. 30, 2019) (collecting cases), *aff'd*, 804 F. App'x 35 (2d Cir. 2020). However, omissions constitute fabrications only if they "render an otherwise true statement false." *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

Plaintiffs' fair-trial claim fails because the omissions in the evidence defendants created do not render the "otherwise true statement[s]" in it "false." *Ibid*.  Plaintiffs allege defendants fabricated only Officer Kerwin's Incident Report. *See* Pls.' Mem. in Opp'n 21.  In its entirety, this report states:

> Patron observed with a dog in the park. Patron, identified by name and DOB, left her dog tied to the park sign at the brick pathway entrance. Patrol observed the unattended dog and wait[ed] for the owner to return. Patron, Veronika [sic] Estrella Vesicka [sic], stated that she was getting her daughter a drink. One criminal summons was issued for Animal in Park.

Incident Report.  Officer Kerwin omitted the details of her altercation with Ms. Vasicka from the report, and Sgt. LaValley failed to correct these omissions. *Ibid*.  Although these omissions violated police protocols, they do not constitute fabrication of evidence because the omitted facts are not material to whether Ms. Vasicka violated Section 375.1(n), and their inclusion would not have rendered false any otherwise true statement in the Incident Report.

Plaintiffs have also failed to show that any fabrication resulted in a deprivation of liberty. "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (addressing summons issued for a barking or trespassing dog). Ms. Vasicka's non-felony summons appears to have led to a single court appearance—not attended by Ms. Vasicka herself—where the case was adjourned in contemplation of dismissal.  This is insufficient to establish the deprivation-of-liberty element of a fair-trial claim. *See, e.g.*, *Jianjun Li v. Vill. of Saddle Rock*, No. 20-CV-2289 (DRH) (ST), 2021 WL 1193618, at *6 (E.D.N.Y. Mar. 30, 2021); *Torres v. City of New York through New York City Dep't*, No. 20-CV-10210 (JPC), -- F. Supp. 3d --, 2022 WL 743926, at *12 (S.D.N.Y. Mar. 11, 2022); *Zubko-Valva v. Cnty. of Suffolk*, No. 20-CV-2663 (ERK) (ARL), 2022 WL 2161193, at *10 (E.D.N.Y. June 15, 2022); *Hawthorne*

*by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 300 (S.D.N.Y. 2020); *Grytsyk v. Morales*, No. 19-CV-3470 (JMF), 2021 WL 1531225, at *15 (S.D.N.Y. Apr. 19, 2021); *Johnson El v. Bird*, No. 19-CV-5102 (CS), 2020 WL 5124920, at *6 (S.D.N.Y. Aug. 31, 2020), *aff'd sub nom. Johnson El v. Chambers*, No. 20-3377, 2021 WL 4484929 (2d Cir. Oct. 1, 2021).

The fact that Ms. Vasicka retained a lawyer for the appearance does not alter the analysis. Plaintiffs argue that the summons resulted in a "deprivation of property" because Ms. Vasicka was compelled to hire a lawyer. *See* Pls.' Mem. in Opp'n 22. However, to establish a fair-trial claim, a plaintiff must show a deprivation of liberty, not property. *Jovanovic*, 486 F. App'x at 152 ("A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of *liberty* as a result.") (emphasis added). Moreover, the decision to hire a lawyer does not constitute a "deprivation of property." *McGriff v. Mun. Hous. Auth. for City of Yonker*s, No. 06-CV-4878 (SCR), 2007 WL 3143706, at *2 (S.D.N.Y. Oct. 10, 2007) (The initiation of legal proceedings which "may . . . require counsel" does "not turn the initiation of proceedings into a deprivation of property.").

Finally, even assuming Ms. Vasicka did suffer a deprivation of a cognizable liberty interest, she has not shown "causation—i.e., that the alleged fabrication of evidence led to [the] deprivation of [her] liberty." *Jovanovic*, 486 F. App'x at 152; *cf. Collins v. City of New York*, No. 14-CV-08815 (AJN), 2019 WL 1413999, at *2 (S.D.N.Y. Mar. 29, 2019) ("[F]abricated evidence need not be the *only* cause of the deprivation of liberty, but it must proximately cause the deprivation.") (internal citation omitted) (citing *Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016)). That defect is fatal here, because the purpose of a fair-trial claim is to vindicate the "truth-

seeking function of the trial process," *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021), not to regulate how officers complete forms that play no part in any judicial proceeding.

B.      **The abuse-of-process claim also fails.**

Plaintiffs' abuse-of-process claim fails because plaintiffs identify no evidence showing that defendants issued Ms. Vasicka a ticket for an "improper purpose." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). "To prove abuse of process, plaintiff must show that the defendant (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (citation omitted). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To establish that element, a plaintiff must show that the defendant "aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution." *Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013) (quoting *Douglas v. City of New York,* 595 F.Supp.2d 333, 344 (S.D.N.Y. 2009)).

Plaintiffs identify three reasons why defendants allegedly issued Ms. Vasicka a summons: (i) to compel Ms. Vasicka to appear in court, (ii) to compel Ms. Vasicka to hire an attorney, and (iii) to escape disciplinary penalties. Pls.' Mem. in Opp'n 22–23. The first ground cannot sustain plaintiffs' claim, because compelling an individual to appear in court is "a legitimate use of process," *Kraft*, 696 F. Supp. 2d at 416, and whatever defendants' motives for compelling Ms. Vasicka to appear in court, "a malicious motive alone . . . does not give rise to a cause of action for abuse of process," *Savino*, 331 F.3d at 77 (brackets and citation omitted). The second ground also fails because Ms. Vasicka has not provided any evidence that defendants wished to compel Ms. Vasicka to retain a lawyer. And while some courts have recognized that issuing a summons

20

"to save one's job could be abuse of process . . . because 'safeguarding one's own employment lies outside the legitimate goal of criminal process,'" *Kraft*, 696 F. Supp. 2d at 416 (quoting *Hernandez v. Wells,* 01-CV-4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 18, 2003)); *but see Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (arresting a plaintiff to obtain "credit for an arrest," and to earn overtime pay were not "collateral purpose[s]" sufficient to sustain an abuse-of-process claim), plaintiffs have not identified any evidence suggesting that defendants issued the summons to protect their jobs.  In the absence of such evidence, summary judgment for defendants is appropriate.  *See Kraft*, 696 F. Supp. 2d at 416 (granting summary judgment where plaintiff did not adduce evidence supporting his allegations that doctors admitted and confined him for "financial gain, thereby increasing their job security").

**V.      The Deliberate-Indifference Claim Fails**

Defendants are entitled to summary judgment on plaintiffs' deliberate-indifference claim for two independent reasons.  First, the claim fails on the merits.  To prevail, plaintiffs must show, among other things, that defendants acted with deliberate indifference to conditions that "pose[d] an unreasonable risk of serious damage" to their health.  *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citation omitted).  Plaintiffs contend that "defendants' conduct in permitting V.V. to be separated from Ms. Vasicka and l[eaving her] to fend for herself constituted deliberate indifference."  Pls.' Mem. in Opp'n 23.  However, V.V. was separated from Ms. Vasicka by only a few feet, for no more than a few minutes, while being watched by a bystander.  Video 2 at 0:00–1:40.  No reasonable jury could conclude that these circumstances "pose[d] an unreasonable risk of serious damage" to plaintiffs' health.  *Darnell*, 849 F.3d at 30.

Second, defendants are entitled to qualified immunity because it is not clearly established that state actors may be held liable for "deliberate indifference" under the circumstances of this case.  The Supreme Court has held that state actors may not act with deliberate indifference to

prisoners' serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 106, (1976), or to prison conditions posing a substantial risk of serious harm to an inmate, *Farmer v. Brennan*, 511 U.S. 825, 829 (1994).  This principle has been extended to protect pretrial detainees from conditions of confinement that, "either alone or in combination, pose an unreasonable risk of serious damage to [their] health." *Darnell*, 849 F.3d at 30; *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  However, no binding authority appears to contemplate that an individual who was briefly detained by a police officer—but never jailed—can bring a "deliberate indifference" claim to challenge the officer's conduct.  Nor does any binding authority appear to contemplate that a deliberate-indifference claim may be based on the separation of a parent from a child—as opposed to indifference to dangerous jail conditions or to an inmate's medical needs.  The sole case that plaintiffs invoke is a pretrial detainee's challenge to jail conditions. *See Herbert*, 2021 WL 3292263, at *5.

Accordingly, defendants are granted summary judgment on this claim as well.

## VI.     The Failure-to-Intervene Claim Lacks Merit

Finally, summary judgment is also appropriate on plaintiffs' failure-to-intervene claim. Because a plaintiff may recover on a failure-to-intervene theory only by showing that the purported failure led to the denial of clearly established statutory or constitutional rights, *Ricciuti*, 124 F.3d at 129, a "failure to intervene claim is contingent upon the disposition of the [underlying] primary claims," *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013); *see Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) (collecting cases).  Because defendants are entitled to summary judgment on all of plaintiffs' underlying claims, they are entitled to summary judgment on plaintiffs' failure-to-intervene claim as well.

22

**CONCLUSION**

Defendants' motions for summary judgment are granted in full.  The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2022
          Brooklyn, New York